■ In the Matter of BELBLE WARD et al., Petitioners, v BROOKWOOD CHILD CARE ORPHAN ASYLUM SOCIETY OF THE CITY OF BROOKLYN et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent Department of Social Services of the State of New York, dated December 20, 1979, and made after a statutory fair hearing, which affirmed a determination of the local agency to remove the subject children from the foster home of the petitioners. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. The determination of the State

agency was rational and supported by substantial evidence. Petitioners did not establish that returning the children to them would be in the children's best interests (see *People ex rel. Ninesling v Nassau County Dept. of Social Servs.*, 46 NY2d 382, 387-390); nor did they demonstrate that the decision of the local agency was based solely and improperly on their ages (see *Matter of Infant S. [Tretin]*, 48 AD2d 425, 427). Mollen, P. J., Mangano and Margett, JJ., concur.

Weinstein, J., dissents and votes to annul the determination and grant the petition, with the following memorandum: In my opinion, the decision of the State agency, affirming the removal of two young boys from the home of foster parents, and the placement of the boys with adoptive parents, worked a grievous injustice on the foster parents, and very possibly on the boys themselves. It was acknowledged by the child care agency that during the 2 1/2 years in which petitioners served as foster parents for the boys, they provided "excellent care" and "loving care". The children formed a lasting family loyalty and had a parental relationship with the petitioners. The foster parents spent their own money on the boys, above the sum granted to them, and have stated that they would not require any financial grants if awarded permanent custody of them. The boys did well in school. Indeed, one of the boys protested when he was removed from the care of the foster parents, with whom he had developed a long affectionate relationship in a stable environment. Although the foster parents are in their fifties, perhaps somewhat above the average age for parents of young boys, the record indicates that their age never hindered them in caring for the boys and that they accepted full responsibility for the boys upbringing. Nonetheless, shortly after the boys were freed for adoption, the child care agency proceeded to arrange for formal adoption by other parties. Apparently, it never seriously considered permitting the foster parents to adopt the children. Indeed, at a conference with the foster parents a few months before the boys were removed from their custody, the foster father stated that he did not want to adopt the boys, only because he was afraid of their natural parents. However, a letter written by the foster parents to the child care agency some time later (but still before formal adoption) stated clearly that the foster parents wished to become the boys' "legal guardian[s]", by which they meant that they wished to adopt them. In any event, the child care agency pressured the foster parents to allow the boys to be adopted (it appears that their age was a significant factor in that agencys decision), and the foster parents finally signed the necessary forms. The local agency removed the children from the foster parents home. The foster parents obtained a statutory fair hearing, after which the State Department of Social Services affirmed the actions of the local agency. They then petitioned for review of the results of that hearing. Petitioners, as foster parents who have cared for the boys continuously for a period of more than 18 months, are entitled to a statutory preference with respect to their adoption (see Social Services Law, § 383, subd 3). By expressing in writing their desire to become legal guardians (meaning adoptive parents) of the boys, petitioners became entitled to the benefits of this statute. As the majority recognizes, the age of petitioners may not be used as a bar to their selection as adoptive parents (see *Matter of Infant S. [Tretin]*, 48 AD2d 425), especially where, as here, their age has been no obstacle to their carrying out the responsibilities of parenthood. In the best interests of the children, I would grant the petition.