[909 NYS2d 345]

In the Matter of TASHIA "R".

Family Court, Clinton County, October 18, 2010

**APPEARANCES OF COUNSEL**

*Dennis D. Curtin, County Attorney*, Plattsburgh (*Michael Hartnett* of counsel), for petitioner. *Larry A. Kudrle*, Plattsburgh, for Tashia "R". *Kathryn "B"*, pro se.

## OPINION OF THE COURT

TIMOTHY J. LAWLISS, J.

In 2004, the court adjudged Tashia "R" and three of her siblings to be abused and neglected children as those terms are defined by Family Court Act § 1012, and placed the children with the Commissioner of the Clinton County Department of Social Services. In 2005, Tashia's mother signed a judicial surrender and the court terminated Tashia's father's parental rights on the grounds of abandonment. Tashia has never been adopted and at each of her permanency hearings, the court continued Tashia's placement with the Commissioner. Tashia's last permanency hearing took place immediately prior to her 18th birthday.

Being mindful that individuals of the age of 18 or older must consent in order to remain in foster care (see Family Ct Act § 1087 [a]) and being aware of Tashia's intellectual limitations, the court has repeatedly expressed concerns in past permanency hearing orders regarding Tashia's ability to knowingly, intelligently and voluntarily consent to a placement past her 18th birthday. In both permanency hearing orders issued in 2009, the court established a permanency hearing goal as "placement in another planned permanent living arrangement (adult residential care)" with an anticipated date of achieving the goal as being Tashia's 18th birthday, as opposed to a later date proposed by the Department.* During Tashia's last permanency hearing held earlier in 2010, the court raised this issue for a third time. Because of the court's concerns regarding Tashia's capabilities, the court advised the Department in the last permanency hearing order that the court would conduct an evidentiary hearing immediately prior to the commencement of the next permanency hearing to determine whether or not Tashia, at the time of the next permanency hearing, was an individual who consented to remain in foster care and thus a child within the meaning of Family Court Act § 1087 (a).

Approximately five months after Tashia turned 18 and two weeks before the scheduled evidentiary hearing, the Commissioner petitioned Surrogate's Court for a decree appointing a

---

* See permanency hearing order in *Matter of Tashia "R"* issued as a result of court proceedings on April 20, 2009 (contained in petitioner's exhibit 1), footnote 1 ("The court offers the following question for the Department's consideration. If, as the Department maintains, Tashia cannot consent to an adoption because of her intellectual limitations, how could she consent to placement beyond her eighteenth birthday?").

guardian of the person for Tashia. In paragraph eight of the Commissioner's verified petition it is alleged that "in order for [Tashia] to remain in Foster Care she requires a guardian who can consent to remaining in Foster Care." The Commissioner goes on to allege in paragraph 10 of his petition that "[Tashia] has been duly certified as a person incapable of managing herself and her affairs by reason of mental retardation and developmental disability, and such condition is permanent in nature."

In support of his Surrogate's Court petition, the Commissioner submitted the affidavits of Dr. Samenfeld-Specht, Dr. Salamone and Dr. Khoury. All three doctors reached the same conclusions, specifically "that [Tashia] is not capable of understanding and appreciating the nature and consequences of health care decisions, including the benefits and risks of and alternatives to any proposed health care, and of reaching an informed decision in order to promote her own well being," and

> "[Tashia] is incapable of managing herself, and/or her affairs by reason of such developmental disability, and that the respondent is not capable of understanding and appreciating the nature and consequences of health care decisions, including the benefits and risks of and alternatives to any proposed health care, and of reaching an informed decision in order to promote her own well being."

In response to the Commissioner's Surrogate's Court petition, an associate attorney on staff at the Mental Hygiene Legal Service (MHLS) for the Third Judicial Department filed an affirmation describing her conversations with Tashia and stated "my ability to have a meaningful conversation with Respondent with respect to guardianship proceedings was limited by Respondent's ability to comprehend what I was saying to her." After outlining the nature of her investigation and her reasoning, the MHLS attorney supported the Commissioner's petition for an appointment of a guardian of the person.

The day before this court's evidentiary hearing, Surrogate's Court issued a decree appointing a temporary guardian of the person for Tashia.

During this court's evidentiary hearing, the Commissioner submitted multiple documents concerning the Surrogate's Court proceeding and the testimony of Tashia's temporary guardian. Tashia's guardian testified that, on Tashia's behalf, she was consenting to Tashia remaining in foster care past her 18th birthday. Tashia's caseworker testified that Tashia never stated she wanted to leave foster care.

At the request of her attorney, the court attempted to take the testimony of Tashia herself, but was unable to do so because Tashia did not understand the nature of an oath. Tashia could neither explain the concept of truth nor the concept of a promise. On the consent of all parties, the court did confer with Tashia in a closed courtroom, on the record, in the presence of only her attorney. During her conversation with the court, Tashia clearly stated she wanted to continue living where she is living (with her foster mother). Tashia could not explain the concept of foster care.

The first question presented to the court in this case is what is necessary for an individual between the ages of 18 and 21 to consent to the continuation of foster care. The Department argues that the statute only uses the term "consent," not the term "affirmative consent" nor "informed consent" and therefore, the consent need not be affirmative nor informed. The court finds this argument to be without merit. The court holds that to be meaningful, the individual's consent must be knowing, intelligent and voluntary. (*See Matter of T.W.C.*, 38 NY2d 128 [1975] [a biological mother's consent to an adoption was valid because it was made after full disclosure of all relevant facts and with full understanding of its legal consequences]; *Matter of Fantasia Y.*, 45 AD3d 1215, 1216 [3d Dept 2007] [a Family Ct Act article 10 respondent father validly consented to a finding of neglect because the Family Court "engaged in a thorough colloquy with him to ensure that he understood the legal effect and consequences of his consent and that such consent was knowingly and voluntarily given"]; *Matter of Jonathan LL.*, 294 AD2d 752 [3d Dept 2002] [article 10 respondent consent was valid because Family Court conducted a thorough colloquy with respondent to ensure that he understood the effect of this consent and that his consent was voluntary].)

If consent is not knowing, intelligent and voluntary, it is not consent at all. To hold otherwise would make a mockery of the requirement that a person can only be held in foster care past their 18th birthday upon their consent. It would be preposterous to hold that someone who is incapable of understanding the concept of foster care can remain in foster care merely by uttering the word "consent" in response to a question or comment that they don't understand.

The second question presented in this case is did Tashia, upon reaching her 18th birthday, knowingly, intelligently and voluntarily consent to stay in foster care? The Commissioner contends

that Tashia could and did consent to remain in foster care. Given the evidence that the Commissioner presented to the Surrogate's Court, this court finds the Commissioner's current position to be baffling. Although, clearly Tashia wishes to remain residing where she is now (a foster home), there can be no genuine dispute that Tashia is not now, nor has she ever been, during any period of time since her 18th birthday, capable of intellectually understanding the concept of foster care. Although Tashia can understand the concept of where she lives, and express that she wants to stay living where she is, foster care is a much more sophisticated and complex concept than residence. Because Tashia did not knowingly, intelligently and voluntarily consent to remain in foster care after her 18th birthday, Tashia left foster care on her 18th birthday.

The appointment of Tashia's temporary guardian the day before the evidentiary hearing does not change the court's analysis. Assuming, without finding, that a guardian can consent to an extension of foster care, to be effective consent, the appointment and consent were necessary at the time of Tashia's 18th birthday. As the Department concedes, at least until November 11, 2010, when new amendments to Family Court Act § 1055 (e) take effect, once individuals leave foster care after their 18th birthday, they cannot elect to reenter foster care. Accordingly, since Tashia left foster care upon her 18th birthday, the subsequent appointment of a guardian who is willing to consent on Tashia's behalf to foster care, does not permit Tashia to reenter the foster care system.

Accordingly, the court concludes that Tashia is no longer a child as that term is defined by Family Court Act § 1087 (a), and the court is not obligated to conduct a permanency hearing pursuant to article 10-A of the Family Court Act.